IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DANIEL DOTSON,
Petitioner,

v. Case No. 3:08cv489/LC/CJK

EDWIN G. BUSS,[1]
Respondent.

---

ORDER and
REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. (Doc. 1). Respondent has filed a response to the petition, providing relevant portions of the state court record and asserting a statute of limitations defense, arguing alternatively that the petition is without merit. (Doc. 17). Petitioner has replied. (Docs. 24, 32). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the

---

[1]Edwin G. Buss succeeded Walter A. McNeil as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent. Fed. R. Civ. P. 25(d).

pleadings and attachments before the court show that the petition is untimely and should be dismissed.

BACKGROUND AND PROCEDURAL HISTORY

On January 9, 2006, the Circuit Court of Escambia County, Florida adjudicated petitioner guilty of two counts of sexual battery on a child less than 12 years of age, and two counts of aggravated child abuse, in Case Number 05-1656. The convictions were pursuant to petitioner's counseled guilty plea. (Doc. 17, Ex. M, pp. 125-33).[2] Petitioner was sentenced to life imprisonment on each sexual battery count and 30 years imprisonment on each aggravated child abuse count, with all sentences running concurrently. (*Id.*). Judgment was rendered on January 9, 2006. (*Id.*). Petitioner did not directly appeal from the judgment.

On January 21, 2006, petitioner filed a motion to withdraw plea under Florida Rule of Criminal Procedure 3.170(l). (Ex. A, pp. 1-2; *see also* Doc. 1, Ex. H). The motion was summarily denied by order rendered February 13, 2006. (Ex. A, p. 3; *see also* Doc. 1, Ex. H).[3] Petitioner's motion for rehearing was denied on March 7, 2006. (Ex. A, pp. 4-6). On March 20, 2006, petitioner filed a notice of appeal with the Florida First District Court of Appeal ("First DCA"). (Doc. 24, Ex. H). The First DCA assigned case number 1D06-1618, and ordered petitioner to show cause why his appeal should not be dismissed as untimely. (Ex. D). Upon petitioner's response

[2]Hereafter, all references to exhibits will be to those provided at Doc. 17, unless otherwise noted.

[3]Respondent asserts the motion was denied on February 17, 2006. (Doc. 17, pp. 2, 4). That is incorrect. The record conclusively establishes that the order was signed and filed on February 13, 2006. (Doc. 17, Ex. A, p. 3; *see also* Doc. 1, Ex. H).

(Ex. E), the appeal was dismissed on September 11, 2006, for lack of jurisdiction. *Dotson v. State*, 937 So.2d 1188 (Fla. 1st DCA 2006) (per curiam) (copy at Ex. F). The First DCA's written opinion provided in full as follows:

> Having considered the appellant's response to this Court's order of July 13, 2006, we dismiss this appeal for lack of jurisdiction. The notice of appeal filed on March 20, 2006, appealing the order on the appellant's postconviction motion, rendered on February 13, 2006, is untimely. Because the notice of appeal was filed more than 30 days after rendition of the order and the unauthorized motion for rehearing did not delay rendition, this Court is without appellate jurisdiction. *See* Fla. R. App. P. 9.110(b).

*Id.* The mandate issued October 10, 2006. (*Id.*). On September 19, 2006, petitioner filed a "Notice to Invoke Discretionary Jurisdiction" in the Florida Supreme Court. (Ex. G). The parties submitted jurisdictional briefs. (Exs. H, I). Petitioner's notice was treated as a petition for review and denied on January 31, 2007, with the court stating in relevant part: "the Court having determined that it should decline to accept jurisdiction, it is ordered that the petition for review is denied." *Dotson v. State*, 950 So.2d 413 (Fla. 2007) (Table) (copy at Ex. J).

On February 8, 2007, petitioner filed a motion for appointment of counsel in the Florida trial court. (Ex. K, pp. 1-3). The motion was denied on February 23, 2007. (Ex. K, pp. 4-21). Petitioner filed a notice of appeal on March 1, 2007. (Ex. K, p. 22). The First DCA dismissed the appeal on June 6, 2007, for petitioner's failure to pay the filing fee or obtain an order of insolvency. (Ex. L).

On March 13, 2007, petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. (Ex. M, pp. 1-8; *see also* Doc. 1, Ex. D). The motion was later amended (*id.*, pp. 9-80; *see also* doc. 1,ex. D), and a memorandum of law added (*id.*, pp. 81-110; *see also* doc. 1, ex. F). By order

rendered January 16, 2008, the motion was dismissed in part and denied in part. (Ex. M, pp. 111-165). The First DCA summarily affirmed on September 5, 2008. *Dotson v. State*, 989 So.2d 1186 (Fla. 1st DCA 2008) (Table) (copy at Ex. O). The mandate issued October 1, 2008. (Ex. P).

Petitioner initiated this federal habeas proceeding on October 8, 2008. (Doc. 1, p. 6).

DISCUSSION

Because petitioner filed his § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA governs this petition. *Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997). Pursuant to 28 U.S.C. § 2244, a one-year period of limitation applies to the filing of a federal habeas corpus petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1). According to the tolling provision of § 2244(d), the time during which a "properly filed" application for state postconviction or other collateral review is pending shall not be counted toward the limitations period. 28 U.S.C. § 2244(d)(2).

Here, petitioner has not asserted that a State-created impediment to his filing existed, that he bases his claims on a right newly recognized by the United States Supreme Court, or that the facts supporting his claims could not have been discovered through the exercise of due diligence before his conviction became final. Accordingly, and as it turns out, conclusively, the statute of limitations must be measured from the remaining trigger, which is the date on which his conviction became final. *See* 28 U.S.C. § 2244(d)(1).

Because petitioner did not appeal his judgment of conviction, the judgment became final for purposes of § 2244(d)(1) on February 8, 2006, which was 30 days after rendition of the January 9, 2006 judgment. *See* FLA. R. APP. P. 9.140(b)(3) (an appeal by a defendant in a criminal case is commenced by filing a notice of appeal "at any time between the rendition of a final judgment and 30 days following rendition of a written order imposing sentence."); *see also* FLA. R. APP. P. 9.020(h) (defining "rendition" as the filing of the signed, written order); *Bridges v. Johnson*, 284 F.3d 1201, 1202 (11th Cir. 2002) (holding that where petitioner did not seek direct review of his judgment of conviction or sentence, his judgment of conviction (entered upon his guilty plea) became "final" for purposes of § 2244 on the date the time for seeking direct review expired), *abrogated on other grounds by Wall v. Kholi*, — U.S. —, 131 S. Ct. 1278, 179 L. Ed. 2d 252 (2011); *Gust v. State*, 535 So.2d 642 (Fla. 1st DCA 1988) (holding that if defendant does not appeal the conviction or sentence, judgment

of conviction and sentence become final when the 30-day period for filing a direct appeal expires).

At that time, petitioner's motion to withdraw plea was pending, which tolled the limitations period. Therefore, although the limitations period was triggered on February 8, 2006, it was statutorily tolled until March 15, 2006, the date the 30-day period for timely appealing the February 13, 2006 order denying plea withdrawal expired. *See* Fla. R. App. P. 9.110(b); *cf. Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383 (11th Cir. 2006) (holding that a postconviction application remains "pending" until the time to seek appellate review expires if a petitioner does not file a timely notice of appeal). The limitations period was not tolled during the pendency of petitioner's untimely appeal. *Evans v. Chavis*, 546 U.S. 189, 126 S. Ct. 846, 849, 163 L. Ed. 2d 684 (2006) (explaining that a claim is "pending" during "the period between (1) the lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under state law.") (citation omitted); *see also Artuz v. Bennett*, 531 U.S. 4, 8, 11, 121 S. Ct. 361, 148 L . Ed. 2d 213 (2000) ("[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings" including "time limits upon its delivery"); *see e.g.*, *Neal v. Sec'y, Dep't of Corr.*, 271 F. App'x. 893, 896 (11th Cir. 2008) (holding that state prisoner's appeal from order denying state postconviction relief did not toll limitations period for federal habeas corpus petition, given state court's determination that the appeal was untimely). This court must defer to the First DCA's ruling that the appeal was untimely. *Pace v. DiGuglielmo*, 544 U.S. 408, 414, 125 S. Ct. 1807, 1812, 161 L. Ed. 2d 669 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the

matter' for purposes of § 2244(d)(2)." (citation omitted)); *Stafford v. Thompson*, 328 F.3d 1302, 1305 (11th Cir. 2003) (holding that "this Court must give 'due deference' to [a] procedural determination by the Georgia Supreme Court. Thus, we are bound by the state court's determination that the appeal was untimely." (citation omitted)).

Nor was the limitations period tolled while petitioner sought discretionary review of the First DCA's order. Because this issue is dispositive, it warrants some elaboration.

Petitioner sought to invoke the Florida Supreme Court's jurisdiction on the basis of conflict, Fla. R. App. P. 9.030(a)(2)(A)(iv), arguing that the First DCA's decision dismissing his appeal expressly and directly conflicted with the Florida Supreme Court's decision in *Hollingshead v. Wainwright*, 194 So.2d 577 (Fla. 1967). (Doc. 24, Ex. I, pp. 16, 23). Petitioner argued that the First DCA should have considered his notice of appeal timely filed, because the trial court denied him due process, failed to follow the law and rendered appellate review unavailable when it failed to appoint conflict-free counsel upon petitioner's motion to withdraw his plea. As a result, says petitioner, he essentially was forced to rely on inmate law clerks who erroneously advised him to file the unauthorized motion for rehearing instead of immediately appealing the order. Characterizing these circumstances as "exceptional," petitioner sought to "quash" the First DCA's opinion. (Doc. 24, Ex. I, pp. 23-26).

Respondent contends petitioner's notice to invoke did not toll the limitations period, because the Florida Supreme Court was without jurisdiction to review the First DCA's decision. (Doc. 17, p. 6). Respondent acknowledges that in denying review the Florida Supreme Court stated, literally, that it "determined that it should

decline to accept jurisdiction." Respondent urges, however, that "[t]he only reasonable reading of the higher court's action is that it did not have jurisdiction at all," (*id*.), due to the untimeliness of petitioner's appeal to the First DCA, and because there was no basis for conflict jurisdiction since "the First DCA did not cite any other court decision." (Doc. 17, p. 7).

Under Florida law, the Florida Supreme Court has conflict jurisdiction only if the decision of the district court to be reviewed "expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law." Fla. R. App. P. 9.030(a)(2)(A)(iv); *see also* Fla. Const. art. 5, § 3. The conflict "must be express and direct, i.e., it must appear within the four corners of the majority decision." *Reaves v. State*, 485 So.2d 829, 830 (Fla. 1986); *cf Jenkins v. State*, 385 So.2d 1356, 1359 (Fla. 1980) ("This Court may only review a decision of a district court of appeal that expressly and directly conflicts with a decision of another district court of appeal or the Supreme Court on the same question of law."). Neither the record, nor a concurring opinion, nor a dissenting opinion can be used to establish jurisdiction. *Reaves, supra*; *Jenkins, supra*. Further, although it is not a necessary basis for conflict jurisdiction that the district court explicitly identify a conflicting appellate opinion in its order, or that the district court state in the opinion that its decision is in conflict, the district court order must at least address the legal principles applied as a basis for the decision, and it must be clear from the analysis in the order that the decision is one that expressly and directly conflicts. *Ford Motor Co. v. Kikis*, 401 So. 2d 1341, 1342 (Fla. 1981) ("[A] discussion[ ] of the legal principles which the [district] court applied supplies a sufficient basis for a petition for conflict review. It is not necessary that a district court explicitly identify

conflicting district court or supreme court decisions in its opinion to create an 'express' conflict under section 3(b)(3).").

In petitioner's case, the four corners of the First DCA's opinion did not so much as call to mind the *Hollingshead* decision, much less expressly and directly conflict with it. In *Hollingshead*, the Florida Supreme Court held that where the trial court had denied the appointment of counsel to assist Hollingshead in pursuing a direct appeal of his conviction, due process required that he be granted a belated appeal with the assistance of counsel. *Id*. at 577-578. The Florida Supreme Court granted Hollingshead relief by way of habeas corpus. *Id*. Hence, "*Hollingshead v. Wainwright* authorized the use of the petition for a writ of habeas corpus as a means for seeking belated appeal." *State v. Meyer*, 430 So. 2d 440, 441 (Fla. 1983); *see also* Amendments Fla. Rules of App. Pro., 685 So. 2d 773, 807 (Fla. 1996) (effective January 1, 1997, requests for belated appeal are to be raised by petition for writ of habeas corpus); Fla. R. App. P. 9.140(j).

In contrast, the First DCA's opinion in petitioner's case neither addressed nor mentioned entitlement to a belated appeal, by way of habeas corpus or on the ground of due process. Rather, the First DCA simply held that it was without jurisdiction to hear petitioner's appeal because notice of appeal was not filed within 30 days of rendition of the order to be reviewed, and the unauthorized motion for rehearing did not delay the date of rendition. *See* Fla. R. App. P. 9.110(b). The First DCA's decision did not address the same question of law as *Hollingshead*; therefore, there was no basis for conflict jurisdiction. Petitioner's notice to invoke the jurisdiction of the Florida Supreme Court was a nullity, because, under existing law, which petitioner has never contended did not control, the notice could never have invoked

the Florida high court's nonexistent jurisdiction. Petitioner's improper attempt to obtain review of the First DCA's decision did not toll the federal habeas limitations period.

In sum, petitioner's Rule 3.170(l) proceeding concluded and was no longer "pending" upon expiration of the time for appealing the trial court's denial order. That proceeding was not "in continuance" during petitioner's untimely appeal to the First DCA or during his improper attempt to invoke the Florida Supreme Court's jurisdiction. *See Carey v. Saffold*, 536 U.S. 214, 219-20, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002) (holding that a state application for postconviction relief is "pending" within the meaning of 28 U.S.C. § 2244(d)(2), "as long as the ordinary state collateral review process is 'in continuance' i.e., 'until the completion of' that process."); *Wade v. Battle*, 379 F.3d 1254, 1262 (11th Cir. 2004) (same); *see also Bismark v. Sec'y Dep't of Corr.*, 171 F. App'x. 278, 280 (11th Cir. 2006) (holding that petitioner's unsuccessful attempt to invoke the discretionary jurisdiction of the Florida Supreme Court to review the appellate court's per curiam affirmance of the denial of postconviction relief had no tolling effect on the federal limitations period, because such relief is not available under Florida law); *Morrow v. McNeil*, No. 5:09cv225, 2010 WL 2179017 (N.D. Fla. Apr. 21, 2010) (same), *Report and Recommendation adopted*, 2010 WL 2179100 (N.D. Fla. May 27, 2010).

Petitioner's next filing was a motion for appointment of counsel on February 8, 2007. The request for counsel, significantly, did not seek review of petitioner's judgment. *See Wall v. Kholi*, 131 S. Ct. at 1285 ("'[C]ollateral review' of a judgment or claim means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process."). Nor did the motion initiate a proceeding for

postconviction relief under Florida law. *See Carey*, 536 U.S. at 223, 122 S. Ct. 2134 ("[F]or purposes of applying a federal statute that interacts with state procedural rules, we look to how a state procedure functions. . . ."); *Artuz, supra*. For purposes of this analysis, the court must keep in mind that "there is no federal precedent for treating a motion for appointment of counsel as a properly filed application for postconviction relief." *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir. 2002).

Florida procedural rules contemplate that an application for postconviction relief set forth one or more specified grounds for relief from judgment. *See* Fla. R. Crim. P. 3.850(a); Fla. R. Crim. P. 3.170(l). Thus a "properly filed application" in Florida must challenge the judgment of conviction and suggest the applicant's postconviction arguments. Fla. R. Crim. P. 3.850(a) and (c); Fla. R. Crim. P. 3.170(l). Here, petitioner's request for appointment of counsel did not state any factual or legal grounds for relief from the judgment, as Florida law requires, but rather only sought appointment of counsel so that counsel could file a future application to withdraw petitioner's plea. The clear import of petitioner's request for counsel was that the filing itself did not seek any relief on the merits or place the merits of petitioner's claims before the trial court for decision. Therefore, petitioner's motion cannot be viewed as properly initiating a proceeding for postconviction relief under Florida law. Petitioner's motion for appointment of counsel was not a "properly filed application for State post-conviction or other collateral review" with respect to petitioner's judgment, and therefore did not toll the § 2244 limitations period. Circuit courts interpreting corresponding provisions of other states have reached similar conclusions. *Compare Voravongsa v. Wall*, 349 F.3d 1, 4-7 (1st Cir. 2003) (holding that the limitations period for a Rhode Island prisoner's federal habeas petition was

not tolled by a request for appointment of counsel under state law because the applicable state postconviction law requires a specific prayer for relief from judgment), *and Beery v. Ault*, 312 F.3d at 951 (holding that an Iowa state prisoner's filing of a motion for appointment of postconviction relief counsel did not toll the statute of limitations, where the motion for appointment of postconviction counsel did not contain the information required by the applicable state postconviction law to commence a postconviction proceeding), *and Banks v. Trani*, 373 F. App'x 857 (10th Cir. 2010) (holding that Colorado state prisoner's request for appointment of postconviction counsel did not qualify as a properly filed application for collateral relief under Colorado law and, thus, did not toll the one-year limitations period for filing a petition for federal habeas relief, since the request did not state any factual or legal grounds for relief, but rather only sought counsel to draft a postconviction motion for petitioner), *with Isley v. Ariz. Dep't of Corr.*, 383 F.3d 1054, 1055 (9th Cir. 2004) (holding that an Arizona state prisoner's filing of a "Notice of Post-Conviction Relief" tolls the limitations period because the state's postconviction process begins with, and requires, the filing of such a notice containing "a request for relief from the judgment of conviction").

This conclusion is also consistent with analogous federal law. For example, a federal habeas corpus action is not "pending" when a petitioner asks the district court to appoint counsel to help him prepare a petition; it becomes "pending" only after there is an actual request for relief from the judgment of conviction. *Woodford v. Garceau*, 538 U.S. 202, 208-10, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003) (holding that petition for federal habeas relief was "pending" on the date the state prisoner "had before the federal court an application for habeas relief seeking an adjudication

on the merits of the petitioner's claims," not on an earlier date when the prisoner filed a motion for appointment of counsel and "Specification of Non-Frivolous Issues," since neither the motion nor the specification addressed the merits of petitioner's claims for habeas relief). The "nearly identical question . . . in the context of interpreting" Florida postconviction law, *Voravongsa*, 349 F.3d at 4, results in the same answer.

Petitioner's next filing was his Rule 3.850 motion on March 13, 2007. By then, 362 days of the one-year limitations period had run.[4] The Rule 3.850 motion was pending from March 13, 2007 (the date it was filed) until October 1, 2008 (the date the mandate issued on appeal of the denial order). The federal habeas limitations period began to run again on October 2, 2008, and expired on October 6, 2008.[5] The instant petition, filed on October 8, 2008, is untimely.

Petitioner argues he is entitled to equitable tolling, because the State "interfered" with his ability to file a timely notice of appeal of the order denying plea withdrawal. (Docs. 24, 32). "[A federal habeas] petitioner is entitled to equitable

---

[4]The first day counted on the AEDPA clock is March 16, 2006, which is the day after the March 15, 2006 deadline expired for filing a notice of appeal of the order denying plea withdrawal. *See San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) ("Under Fed.R.Civ.P. 6(a)(1), 'in computing any time period specified in . . . any statute that does not specify a method of computing time . . . [we must] exclude the day of the event that triggers the period[,] count every day, including intermediate Saturdays, Sundays, and legal holidays[, and] include the last day of the period," unless the last day is a Saturday, Sunday, or legal holiday.'" (alterations in original)). Because no event served to toll, until the Rule 3.850 filing, the clock ran for 362 days, which includes March 12, 2007.

[5]Simply counting the days, the statute of limitations expired 3 days after the mandate, or October 4,2008, but because that was a Saturday, petitioner had until the following Monday, October 6, 2008, to file his federal habeas petition.

tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing" of his federal habeas petition. *Holland v. Florida*, 560 U.S. —, 130 S. Ct. 2549, 2562, 177 L. Ed. 2d 130 (2010) (internal quotation marks omitted); *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam) (holding that equitable tolling is available "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence"). "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland*, 130 S.Ct. at 2565 (internal quotation marks and citation omitted). "As for the 'extraordinary circumstance' prong, like the Supreme Court's articulation in *Holland*, [the Eleventh Circuit] too ha[s] required a defendant to show a causal connection between the alleged extraordinary circumstances and the late filing of the federal habeas petition. *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011) (citing *Lawrence v. Florida*, 421 F.3d 1221, 1226-27 (11th Cir. 2005)). "The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner." *San Martin*, at 1268 (citing *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1286 (11th Cir. 2002)). "Mere conclusory allegations are insufficient to raise the issue of equitable tolling." *Id.* (citations omitted).

Here, petitioner alleges that he has "shown due diligents [sic] in filing all (pro se) motions that he knew to file, relying soly [sic] on jailhouse lawyers and the advice of untrained law clerks. (Doc. 24, p. 2). This allegation of diligence is conclusory. Moreover, the fact that petitioner sought various types of state court relief does not show diligence in the filing of his federal habeas petition.

Further, neither petitioner's ignorance of the law, nor his reliance on inmate law clerks constitutes an "extraordinary circumstance." *See, e.g., Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000) (holding that petitioner's *pro se* status and ignorance of the law are not "rare and exceptional" circumstances because they are typical of those bringing §2254 claims"); *Marsh v. Soares*, 223 F.3d 1217 (10th Cir. 2000) (holding that federal habeas petitioner was not entitled to equitable tolling of limitations period, even though inmate had pursued claims diligently with exception of eight-month delay after his first petition was dismissed without prejudice for failure to exhaust state remedies; neither inmate's ignorance of the law, nor fact that inmate law clerk working through prison legal access program helped draft petition, excused prompt filing, and nothing indicated that alleged closure of prison law library for 15 days on holidays and vacations caused filing delay); *see also, e.g., Holloway v. Jones*, 166 F.Supp.2d 1185 (E. D. Mich. 2001) ("Claims that a petitioner did not have professional legal assistance are not an extraordinary circumstance which would toll the statute of limitations."); *Bilodeau v. Angelone*, 39 F.Supp.2d 652, 659 & n. 1 (E.D. Va. 1999)(petitioner's claim that delay in filing the petition resulted from his seeking legal assistance would neither establish excusable neglect so as to warrant an enlargement of time to file the petition, or support equitable tolling of the statute of limitations).

Petitioner also attempts to establish extraordinary circumstances by asserting that his confinement in segregation during the 30-day period following the trial court's denial of plea withdrawal delayed his receipt of a notice of appeal form. (Doc. 32, p. 3; Doc. 24, pp. 2-3). Yet petitioner fails to establish a causal connection between this delay and the filing of his federal habeas petition. Additionally,

petitioner concedes he received the notice of appeal form in time to timely file it, (doc. 32, p. 4), but contends the institutional law clerk "was untimely" in returning to segregation to place the institutional mail stamp on petitioner's notice of appeal. (Doc. 24, p. 3; Doc. 32, pp. 3-4). Even accepting petitioner's contention concerning delay in the institutional stamping of his notice of appeal as true that, the record will support only a two-day delay, which did not affect the timeliness of petitioner's notice of appeal because he did not execute it until March 18, 2006, after the 30-day appeal deadline expired. (Doc. 24, Ex. H).

Lastly, petitioner argues that the First DCA's delay in dismissing his appeal caused him to miss the limitations deadline. (Doc. 24, p. 2). Petitioner shows, however, no inordinate delay in the processing of the notice of appeal. Moreover, petitioner fails to recognize the existence of ample time after the appeal was dismissed for him to file his federal habeas petition. Petitioner chose to pursue further (unavailable) review of the First DCA's dismissal and to file a motion for appointment of postconviction counsel, instead of filing a proper tolling motion, or timely seeking the relief he now desires.

In sum, the ultimate failure to file within the statutory period was a direct result of decisions made and actions taken by petitioner. Having created the situation that caused his petition to be time-barred, petitioner cannot then avail himself of the equitable power of the district court.

## CONCLUSION

The instant petition is untimely. Petitioner has not established entitlement to equitable tolling or any other exception to the limitations period. Therefore, the petition should be dismissed.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Therefore, it is recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Edwin G. Buss has been substituted as the respondent in this cause.

And it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1) challenging the judgment of conviction and sentence in *State of Florida v. Daniel Ray Dotson*, entered in the Circuit Court of Escambia County, Florida, case number 05-1656, be DISMISSED WITH PREJUDICE.

2. That the clerk be directed to close the file.

3. That a certificate of appealability be DENIED.

At Pensacola, Florida this 21st day of June, 2011.

/s/ Charles J. Kahn, Jr.

CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).